THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LINDA
PARNELL, Defendant-Appellee.

(No. 74-345;

Third District—August 30, 1975.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Earl Washington, of Chicago, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This is an appeal by the State from a pretrial order suppressing an oral statement made by defendant Linda Parnell to a police officer.

The defendant was charged with the offense of murder which arose out of the shooting of Johnnie R. Scott on the evening of January 23, 1974, at Kankakee, Illinois. When the first police officer, Collier, arrived at the scene, the defendant made a spontaneous statement that she had shot the deceased. The admissibility of that statement is not at issue in this appeal. Thereafter the defendant was given her "*Miranda* warnings," and she advised Officer Collier that she did not wish to make a statement until she had a lawyer. Shortly afterwards, Officer Krizan arrived, again defendant was given her "*Miranda* warnings," and for the second time the defendant indicated she did not wish to make a statement without having a lawyer present. By the time Detective Helmle arrived on the scene, the defendant had been taken to the city police station, but Krizan testified he told Helmle that the defendant had been given her "rights" and did not wish to make a statement. At the suppression hearing Detective Helmle did not recall being so advised.

When Helmle finished his crime scene investigation, he returned to the police station where he met the defendant for the first time. She was again told of her "rights," and Helmle then advised her that he was going to do a dermal nitrate test on her hand, explaining how it was done and what the finding might be. During the course of performing this test, Helmle asked Miss Parnell what had happened earlier that evening. Miss Parnell replied that "she had words with the deceased that they had gotten into an argument and that she had shot him." Before trial, the defendant filed a motion to suppress this statement and the trial court granted the motion on the grounds that her statement was involuntary within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966).

■■ The State contends on appeal that this statement should not have been suppressed because, under cases construing the *Miranda* decision, it is permissible to obtain a valid waiver of rights and an admissible statement after defendant has once asserted his right to remain silent, provided good warnings are given before the subsequent interrogation. See, *e.g., People v. Brookshaw*, 12 Ill.App. 3d 221, 299 N.E.2d 20 (3d Dist. 1973); *United States v. Collins*, 462 F.2d 792 (2d Cir. 1972).

We agree with this principle in general, but it is not controlling in the case at bar. Here the issue is whether a defendant, who has invoked her right to remain silent and her right to consult an attorney, may be interrogated further before she confers with her attorney. The decision in *Miranda v. Arizona* very clearly states that a defendant's request for an

attorney is an absolute bar to further questioning until an attorney is present, as follows:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.*" (Emphasis added). 384 U.S. 436, 444-445, 16 L.Ed.2d 694, 706-07, 86 S.Ct. 1602, 1612.

"Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.* At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody and interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. *If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.*" (Emphasis added.) 384 U.S. 436, 473-74, 16 L.Ed.2d 694, 723, 86 S.Ct. 1620, 1627-28.

■■ The State argues that defendant's oral statement to Detective Helmle was given freely and voluntarily, and thus a waiver of her right to an attorney. The trial judge reached an opposite conclusion. We agree with Judge Burns' comments made orally at the hearing:

"I think perhaps the discussion about the Miranda Rights could have very very easily been confused by the Defendant with something related to the Dermal Nitrate Test, that right * * *. Whatever her agreement was, whatever her signifying was that she understood, I think she was signifying to the Nitrate Test. I think the question was inappropriate without having an attorney present for her. There is no evidence that they even let her make a phone call to let her get an attorney or even try to contact one even though she requested."

■■ Neither the officers, nor this court can assume that defendant

silently waived her right to counsel by her failure to use the phone or otherwise contact an attorney.

We believe situations to which *Miranda* applies, however, are governed not by the general test of voluntariness, but rather by the more precise test of whether the constitutionally-required warning was given and, if given, whether the rights set out by that warning were knowingly, intelligently, and voluntarily waived. *People v. Shinn*, 133 Ill.App.2d 923, 273 N.E.2d 679 (3rd Dist. 1971).

■■ It is our opinion that where there is a request for an attorney prior to any questioning, as we find here, a finding of knowing and intelligent waiver of the right to an attorney is impossible. As the above quoted passages from *Miranda* suggest, the defendant has an absolute right to delay interrogation by requesting an attorney. We interpret *Miranda* to mean that the accused has the unqualified right to stop the questioning and consult with an attorney and this request precludes further questioning until there is in fact the requested consultation. If the police disregard such a request and the interrogation proceeds, any statement taken thereafter cannot be a result of waiver but must be presumed a product of compulsion, subtle or otherwise.

The trial court was correct in suppressing the statement given to Detective Helmle.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.