THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONDELL DAVIS, Defendant-Appellant.

Third District    No. 78-422

Opinion filed September 10, 1980.—Rehearing denied October 7, 1980.

Patrick J. Hughes, Jr., of State Appellate Defender's Office, of Springfield, and Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Charles R. Zalar, State's Attorney, of Morris (John X. Breslin and Terry Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Rondell Davis, was convicted of the October 17, 1977, robbery of a Morris, Illinois, Pizza Hut following a jury trial in the Circuit Court of Grundy County. He was sentenced to a 10-year determinate prison term.

On appeal the defendant has raised three issues which he has phrased as follows:

(1) Whether evidence of the defendant's prior burglary conviction was erroneously admitted as impeachment evidence

without weighing its probative value against its prejudicial impact and on the basis of the trial judge's mistaken belief he had no discretion but to admit it as a "recent" conviction under *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

(2) Whether by permitting the prosecutor to improperly cross-examine and impeach two of its own critical witnesses and by threatening such witnesses with perjury, the trial judge effectively insured that their testimony would be substantially that given by them at a prior trial regardless of the truth of such testimony.

(3) Whether the record affirmatively demonstrates that in imposing a 10-year sentence of imprisonment, the trial court relied upon its erroneous belief he had a prior record of delinquency.

■■ Prior to trial, the defendant filed a written motion to exclude evidence of his prior conviction of burglary in May of 1977. Two reasons were argued by the defendant to support his motion. First he contended that the admission of such evidence of his prior burglary conviction would be so prejudicial to him that he could not receive a fair trial. Second, he argued that his conviction of burglary does not in actuality relate to his testimonial worth and it would unjustly prejudice him. After hearing argument on the motion, the trial court granted it insofar as it applied to the case in general, but denied it in the event that the defendant chose to testify in his own behalf, ruling that the very recent prior burglary conviction could be used to impeach the defendant. At trial, the defendant testified and admitted his prior burglary conviction in May of 1977. Pursuant to the authority of *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563, the defendant's tactical decision to admit his prior burglary conviction rather than wait for the State to introduce it after his pretrial exclusion motion was denied did not amount to a waiver of the issue in and of itself. However, in the present case, Davis failed to preserve the alleged error of admitting his prior conviction into evidence in his written post-trial motion. Failure to raise the issue in his post-trial motion waives the issue on review. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856. Under very similar circumstances, we held there was a waiver where the defendant had not objected at trial to the admission of evidence which he had sought to exclude by a pretrial motion and where he failed to specifically include that alleged error in his post-trial motion. (*People v. Cook* (1979), 78 Ill. App. 3d 695, 397 N.E.2d 439.) As we stated in *Cook*:

"Although we find some merit in the argument that once counsel attempts to preclude illegally obtained evidence by making a pretrial motion to suppress no other action on his part should be necessary to preserve the issue on appeal, such is not the law. * * * [It is] clear that to preserve an error on appeal counsel must

either object to it at the proper time (which has been interpreted by the supreme court to mean *at trial* (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331)) or raise it in the post-trial motion." *People v. Cook* (1979), 78 Ill. App. 3d 695, 698, 397 N.E.2d 439, 441.

Defendant's second argument is that the trial court improperly permitted the State to cross-examine and impeach two of its own witnesses. At the trial, the State called Dennis Willis and Timothy Brown. Willis had been charged as the driver of the getaway car in this Pizza Hut robbery, and he had been acquitted in a separate trial. Timothy Brown was a juvenile, and he had allegedly procured the revolver that Davis used in the robbery for $35. Both Willis and Brown had testified at the trial of Mike Witherington who had allegedly participated with defendant Davis in the instant Pizza Hut robbery to the extent of accompanying Davis inside. Witherington had also been acquitted in a separate trial which was presided over by the same trial judge who presided over defendant Davis' trial.

During preliminary direct examination of Willis by the State he testified that he had difficulty remembering the date of the alleged Pizza Hut robbery, and whether he had observed the defendant Davis on that date. Willis had testified without difficulty May 18, 1978, at Witherington's trial but had difficulty 2½ weeks later at Davis' trial on June 7, 1978. Willis' answers to the State's questions were unresponsive and unexpected in light of his earlier testimony at Witherington's trial. The trial court noted that Willis was "arrogant, cocky, and openly hostile" during the State's direct examination. Upon the State's motion, the trial court declared Willis a hostile witness and permitted the State to cross-examine him.

Similarly, Timothy Brown's testimony on direct differed in substantial respects from his earlier testimony at Witherington's previous trial to the State's surprise. The trial court again noted that Brown was unwilling to answer questions precisely and that he had answered, to the contrary, with precise answers regarding dates and conversations with defendant Davis about procuring a gun for him at the recent trial of co-defendant Witherington. Thus the court also declared Brown to be a hostile witness, permitting cross-examination by the State.

■ Declaring a witness hostile and permitting cross-examination and impeachment by the party who called the witness is a matter of judicial discretion. We set forth the guidelines to determine whether an abuse of that discretion had occurred in *People v. Robinson* (1977), 46 Ill. App. 3d 713, 717-18, 361 N.E.2d 138, 141-42, where we stated:

"In order for the court to consider calling a witness as a court's witness the party asking the court to adopt the witness must lay a proper foundation. That foundation requires a showing that the

witness' integrity or veracity is doubtful, that neither side desires to vouch for his testimony, that the testimony relates to direct issues in the case and the testimony sought to be elicited is necessary to prevent a miscarriage of justice. *People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385; *People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625; *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516; *People v. Siciliano* (1955), 4 Ill. 2d 581, 123 N.E.2d 725; *People v. Reddock* (2nd Dist. 1973), 13 Ill. App. 3d 296, 300 N.E.2d 21."

■■ Unlike *People v. Swimley* (1978), 57 Ill. App. 3d 116, 372 N.E.2d 887, and *People v. Williams* (1977), 47 Ill. App. 3d 199, 361 N.E.2d 1138, relied upon by the defendant, the testimony of both Willis and Brown, was more than just disappointing and unfavorable. It was totally unexpected in light of their sworn testimony and cooperation with the State in a prior criminal proceeding a few weeks earlier, and was openly hostile. Defendant's reliance upon *People v. Shanklin* (1975), 26 Ill. App. 3d 167, 324 N.E.2d 711, and *People v. Lipscomb* (1974), 19 Ill. App. 3d 114, 311 N.E.2d 257, is equally misplaced. Both cases are factually at odds with the obvious hostility of the witnesses and the genuine surprise to the State in the case at bar. Consistent with the guidelines set forth in *People v. Robinson,* we hold that the record in the instant case does not show an abuse of discretion by the trial court in declaring witnesses Willis and Brown to be hostile witnesses. *People v. DeFord* (1978), 59 Ill. App. 3d 942, 376 N.E.2d 97.

■■ The defendant also claims error occurred in allowing the State to impeach both Willis and Brown with their prior testimony at Witherington's trial which was contrary to their testimony in direct in Davis' trial. We believe no error occurred. The trial court properly instructed the jury that any prior inconsistent statements by the witnesses were for impeachment only and not as direct evidence against the defendant on the issue of guilt or innocence. *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.

■■ Another issue put by the defendant is based upon the trial court, after declaring witnesses Willis and Brown to be hostile, warning each witness that if their answers were substantially different on a material point from their prior sworn testimony, they could be charged with perjury or contempt of court. The trial court qualified his warning by informing the witnesses he was,

"* * * not telling you what you have to testify to, but I am telling you right now if your answers differ substantially from this prior trial, the State's Attorney could bring a charge of purgery [*sic*]. * * *

I do not mean to intimidate you, I mean to warn you of the consequences of what will happen if you do not answer the

questions the same as the other trial because that, you see, would place two inconsistent statements under oath, do you understand what I mean?

And this is a textbook definition of purgery [*sic*] that was explained to you. I am not even going to bring the charge, the State's Attorney would make that decision and another judge hear it, but I am warning you for your won benefit as an individual who is testifying here that you could be subjected to a criminal prosecution if your answers differ substantially."

The warnings to witnesses Willis and Brown were given outside the presence of the jury. The defendant objected to the warnings and both at trial and on appeal, urged that the admonitions intimidated the witnesses to testify exactly as they had during the prior trial of co-defendant, Witherington. We disagree. In a similar case where a witness had trouble remembering and was made a hostile witness, the trial judge's warning that the witness was under oath and subject to penalties for perjury and contempt, was held not to be error. (*People v. Hutson* (1973), 13 Ill. App. 3d 775, 300 N.E.2d 305.) It is obvious from a reading of the specific warnings in context in the record that the trial judge in the case at bar did not intimidate the witnesses, but merely informed them of the applicable law. In *Webb v. Texas* (1972), 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351, the trial court, rather than a warning, actually threatened a witness with prosecution for perjury. In the case now before us, the trial court's admonition is informative and not threatening. Defendant has also wrongly relied upon the cases of *People v. Zaccagnini* (1963), 29 Ill. 2d 408, 194 N.E.2d 286, and *People v. Crane* (1976), 34 Ill. App. 3d 850, 341 N.E.2d 97, where a warning to witnesses under facts similar to the case at bar were held to be error. But in each said case, the warning was given in the presence of the jury. We believe this fact adequately distinguishes both *Zaccagnini* and *Crane*, because the warning complained of by this defendant was made outside the presence of the jury and certainly did not prejudice the jury in this case.

The final issue raised by the defendant is whether the trial court erred in imposing a 10-year determinate sentence when he relied in aggravation upon defendant's nonexistent prior juvenile delinquency. At the sentencing hearing, the trial court twice referred to a prior juvenile delinquency record of the defendant which in fact did not exist. The confusion of the trial court occurred as a result of the defendant's prior burglary conviction which was entered by the court on May 18, 1977. The defendant was born on January 22, 1960. Although the presentence report recites his prior burglary conviction of May 18, 1977, the record also indicates that defendant was 17 years old and an adult at the time he was convicted of the prior burglary. The defendant was tried as an adult for

that burglary, but the record does not indicate whether or not he was a juvenile at the time of the commission of that prior burglary. The trial court's confusion on this point is reflected in the record, and it is manifestly apparent that the trial court's reference to a prior juvenile delinquency was in fact a reference to defendant's recent prior burglary conviction. Such an interpretation of the trial court's statement is supported by a subsequent statement wherein the trial judge recited that the evidence "proved he's convicted of one crime and does another within a few months." From a reading of the trial court's comments in context in the record we have determined that the trial court was referring cumulatively to one and the same prior criminal activity of defendant Davis, the same prior burglary conviction.

Defendant relies upon the case of *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265, for support of his argument that the trial court erroneously considered as an aggravating factor an unsupported and false fact. In *Gant,* the trial court improperly considered the complainant's death two days after the incident, a fact which in that case was never charged nor proved. The so-called fact in the case at bar was only the confusion on the part of the trial court in considering the only prior recent criminal proceeding in this defendant's background. We do not believe the result reached in *Gant* is required in the present case. Under the cases of *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, and *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, construing section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—4.1), there is a rebuttable presumption that the sentence imposed is proper. The present record does not rebut the presumption that the sentence is proper.

For the reasons stated, the judgment of the Circuit Court of Grundy County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STENGEL, J., concur.